UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRAD R. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 04-2009 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF KANKAKEE, KARLA FREEMAN, JAN BOND, and CHRIS BOHLEN, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

The plaintiff, Brad R. Johnson ("Johnson") has filed this action against the City of Kankakee (the "City"), Karla Freeman ("Freeman"), Jan Bond ("Bond"), and Chris Bohlen ("Bohlen"), asserting various constitutional violations. He brings his claims pursuant to 42 U.S.C. § 1983. Freeman and Bond are code enforcement officers for the City. Bohlen is the City's appointed corporation counsel.

The parties have filed cross-motions for summary judgment [#56, #59]. For the following reasons, the defendants' motion is granted, and the plaintiff's motion is denied.

## **BACKGROUND**

Johnson owns a house in Kankakee, Illinois.[1] Johnson's wife and child reside in the house. Johnson is employed by Francis Marion University in Florence, South Carolina. When the university is in session, Johnson stays at a campground in North Carolina. Between August 25 and December 7, 2003, he spent five nights at his home in Kankakee. Johnson's wife and child reside at the Kankakee home when he is teaching.

During the relevant time frame, Johnson, his wife and child shared the house with other people - Lonna Cobb, Bobby Tucker, Walter Turner, and Penny Stickney. Johnson asserts that these people did not pay rent. However, he admits that they "share expenses," including a portion of the mortgage and utilities.

---

[1] The house is titled only in Johnson's name.

The City requires legal owners of residential rental property to obtain operating licences. Chapter 8, Article II, Section 8-14 of the Kankakee City Code (the "Ordinance") states:

> No person, corporation or other entity shall rent, lease or allow a person other than the legal owner to occupy any dwelling unit within the City of Kankakee, unless the City of Kankakee has issued a current unrevoked operating license in the name of the legal owner of record for the specific dwelling unit. Kankakee, Ill., Code ch. 8, art. II, § 8-14 (2003).

Freeman handled the geographic area of the City in which Johnson's home was located. On August 15, 2003, she received an anonymous call[2] informing her that Johnson's property was being used as a rooming house. Freeman sent a letter to Johnson informing him that the City's records indicated that his house was a rental property, and that the City's Ordinance required rental dwellings to be licensed. The letter stated that the property would need to be inspected before the license could be issued, and that Johnson or a designated manager/agent would need to be present at the inspection. The letter also stated that if Johnson believed the notice was in error, he should contact the City to have the situation reviewed or reevaluated. An "Application for Rental Operating License" was enclosed with the letter.

At this point, the stories diverge. Johnson claims he talked to a woman in Freeman's office who acknowledged that the warning letter was sent in error and promised to correct the mistake. Freeman disputes that this conversation ever took place. The parties agree that Johnson had several conversations with City employees; however, the issue was not resolved.

What happened next is undisputed. On September 30, 2003, after Johnson failed to comply with the letter and inspection, the City issued a Notice of Violation Ticket. The ticket imposed a $50 fine, informed Johnson that payment of the fine would not constitute abatement of the condition, and that if he failed to abate the condition, he could be issued additional violation tickets. Johnson was further informed that failure to pay the fine within thirty days would result in the issuance of a summons to appear at an adjudication hearing and could result in a default finding and a maximum fine of $500 for each violation. Johnson did not apply for a license, allow his house to be inspected, or pay the fine. Two subsequent Notice of Violation Tickets were issued on October 21, 2003 and December 10, 2003, each carrying a maximum penalty of $500.

On January 8, 2004, the city held an adjudication hearing on all three tickets. During the hearing, the City was interested in the narrow question of whether non-family members were living in Johnson's home and paying rent. Johnson was apparently eager to explain that the

---

[2] Freeman believed the call was from a City alderman, but people often do not leave their names when they leave messages on her answering machine. Freeman Dep. 6, 59.

people in his home were not renters but were part of his household.³ Ultimately, Johnson was found guilty by an Administrative Hearing Officer and ordered to pay $250 per citation plus costs. Johnson did not appeal the determination. Instead, the next day, he commenced this action.

The city contends that the Ordinance in question has a neutral, legitimate objective. Johnson disputes that the city has a neutral purpose for the Ordinance and claims that the City has violated his constitutional rights.

## ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). A party opposing summary judgment bears the burden to respond, *not simply by resting on the pleadings, but by affirmatively demonstrating*⁴ that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-324 (emphasis added). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment, if appropriate, shall be entered against [the nonmovant]." *See* Fed. R. Civ. P. 56(e).

I. Johnson's motion for summary judgment⁵

---

³ Johnson's pleadings are replete with vivid descriptions of the housemates and how each enhances the household. Regardless of the intangible benefits that each adds to the living environment, the city apparently found the information irrelevant.

⁴ Consequently, the court must disregard unsupported assertions from the complaint that Johnson contends to be "fact."

⁵ Johnson reminds the court that he is proceeding pro se, so a less stringent standard should apply to his pleadings. Johnson also submits a letter he wrote to the City, dated May 20, 1998 [#59-3, pp. 83-84], which was signed, "Dr. Brad R. Johnson, J.D., Ph.D., C.P.A." His

Johnson's Count I seeks a declaratory judgment that the Ordinance is overbroad and unconstitutional on its face, and it is unconstitutional in effect as applied to his situation. Counts II, III and IV allege violations of his rights of substantive due process, equal protection, and the dormant commerce clause. Specifically, he argues that the Ordinance violates (1) his right to direct the upbringing of his child; 2) his right to interstate travel;[6] 3) his right to associate within the confines of his home; 4) his right to religious freedom; and 5) his right to privacy.

A.  Constitutionality of the Ordinance

Johnson argues the Ordinance is overbroad and unconstitutional on its face because it bans anyone from living together unless they are titled to the property.  It is a canon of statutory construction that statutes should be read in such a manner as to make them constitutionally valid. *See Lac Courte Oreilles Band v. United States*, 367 F.3d 650, 654 (7th Cir. 2004).  In addition, "state or local regulations are not unconstitutional deprivations of the right of family association unless they regulate the family directly." *Hameetman v. City of Chicago*, 776 F.2d 636, 643 (7th Cir. 1985) (explaining that "[t]he collateral consequences of regulations not directed at the family, such as regulations designed to keep illegal aliens out of the country, do not bring the constitutional rights of family association into play").

This Ordinance on its face was aimed at licensing rental properties.  It was a neutral law that was meant to better regulate rental properties within the city.  The law did not touch on any constitutional concern; thus, it can easily be read in such a manner to be constitutionally valid and not overbroad.  The Ordinance does not ban people from living together in the same dwelling unit.  It *does* require the titled owner to obtain a rental operating license in such situations.[7]

Johnson further argues that the Ordinance imposes a burden on family members who reside with the titled owner.  But the city enforces the Ordinance on a case-by-case basis, trying

---

pleadings are far from clear.  The court has done its best to decipher his arguments and comb through his filings to determine that all issues raised have been considered.  Any arguments which are not discussed herein have been considered and rejected rather than overlooked.

[6] Johnson claims that the Ordinance implicates the Dormant Commerce Clause by impeding Kankakee residents from exporting their services out of state.  This claim is undermined by the fact that Johnson continued to travel out of state, exporting his services to South Carolina.  Johnson cannot invoke the rights of other Kankakee residents in this claim, as he has not shown an identity of interests with other Kankakee residents.

[7] Freeman clarified at her deposition that when the owner lives in the dwelling unit and rents rooms to people, it is considered a "rooming house" subject to the Ordinance.  Freeman Dep. 41.

4

to limit any peripheral disruption of families within the community.[8] The clear intent of the Ordinance is to regulate situations in which individuals live in properties owned by others. The license application specifies certain common-sense requirements designed to prevent overcrowding and ensure the health and safety of tenants.

Finally, Johnson does not have standing to argue generally that the Ordinance is overbroad as applied to families. In order to establish standing to sue in federal court, a plaintiff must show 1) an injury in fact that is concrete and particularized; 2) a causal connection between the injury and the conduct; and 3) an injury that will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Johnson cannot show that he was forced to get a rental license because his wife and child live with him. It is uncontested that Johnson had four unrelated people living in his house; because of this, the City required him to obtain a license.

### B. The Ordinance as applied to Johnson

#### 1. Substantive due process and dormant commerce clause

Johnson claims the Ordinance violates (1) his right to direct the upbringing of his child; 2) his right to interstate travel; 3) his right to associate within the confines of his home; 4) his right to religious freedom; and 5) his right to privacy.[9]

Neither the Ordinance itself nor application of the Ordinance restricted Johnson from exercising any of these rights. Johnson admits that he selected housemates who would *enhance* his ability to exercise these rights. Nothing in the Ordinance prohibits Johnson from selecting those housemates or having them share in the costs. Neither does the Ordinance specify to what

---

[8] The city does not enforce the Ordinance against families. Freeman Dep. 44. Bohlen explained that the Ordinance was designed "to deal with severe blight that had occurred as a result of overuse of housing stock and it—the failure of owners of rental property to maintain their property." Bohlen Dep. 35. Bohlen also explained that rental properties are subject to the same building code requirements as other dwellings, but rental properties are also subject to the licensing requirement. Bohlen Dep. 7-8.

[9] The court need not discuss at great length Johnson's contention that the inspection request is a violation of his right to privacy. The City followed up on a report that Johnson was running a rooming house. Although Johnson contacted City officials to contest the classification of his property, he gave them no basis other than his say-so to "review and/or reevaluate the situation." He denied them the opportunity to do an inspection to determine whether his living arrangement required a City license. This is in stark contrast to an offer he extended to City officials in 1998 to support his assertion that the same house (and a similar living/financial arrangement) constituted a "single household" and not a "rooming/lodging house." He ended the 1998 letter by "encourag[ing the City] to come to our house for a visit" to verify the facts supporting the "single household" classification.

5

extent, if any, those individuals *should* enhance the collegial atmosphere in his home. The Ordinance simply requires that *if* a homeowner desires this sort of living arrangement, he must obtain a rental license. It is undisputed that the four housemates are unrelated to Johnson. It is also undisputed that the housemates paid Johnson to live in the house by sharing the cost of his mortgage payment and utilities.[10]

Beyond stating that this Ordinance had a "chilling effect" on his rights, Johnson does not provide any evidence to show what injuries he sustained as a result of the disputed Ordinance. To the contrary, there is evidence that Johnson continued to travel to and from work, undermining his charge that the Ordinance had a chilling effect on his right to interstate travel. Similarly, there is no evidence that having to obtain the license would have had any effect on his freedom to practice his religion or his ability to direct his child's upbringing in an enriching home environment.

2. Equal protection

Johnson alleges that the city arbitrarily and capriciously prosecuted him for violation of the Ordinance. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (*quoting* U.S. Const. amend. XIV, § 1). For non-suspect classes, the government action is "presumed to be valid and will be sustained if the classification drawn by the [action] is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440. Johnson is not a member of a suspect class, so the City need only show that the enforcement mechanism for the Ordinance was rationally related to a legitimate government interest. Looking beyond the Ordinance to the rental license application and attached information, the Ordinance is clearly related to the safety and health of the City's tenants.

Despite any rational relationship to a legitimate government interest, the City may not deliberately target Johnson personally outside the scope of the Ordinance. *Village of Willowbrook v. Olech*, 528 U.S. 562, 565-66 (2000). For a "class of one" equal protection claim, a plaintiff must "present evidence that the defendant deliberately sought to deprive him of the equal protection of laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) (*citing*

---

[10] Though Johnson attempts to distinguish the sharing of expenses as something other than "rent," it is a distinction without a difference. It is undisputed that the housemates "shared expenses." In December 2004, Johnson filed paperwork with the Veterans Assistance Commission of Kankakee County to accept "rent vouchers" of $200.00 for an unidentified veteran's shelter/rental expenses. Although outside the time period relevant to this case, the V.A. paperwork states that four to seven people lived in the home, depending on the time of the year. In addition, the Ordinance does not limit the license requirement to situations in which money is paid; it applies to situations in which the property owners "rent, lease or *allow*" another person to occupy a dwelling unit.

*Olech*, 528 at 565-66). To the extent that Johnson attempts to state an equal protection "class of one" violation, that argument is also unavailing. Johnson does not provide any evidence beyond mere allegations to support this claim. To the contrary, the City's initial citation was issued after it received an anonymous call and Johnson refused to provide anything more than his say-so that the property was not being used as a rooming house. Citizen complaints are not necessarily an invalid enforcement mechanism; neighbors are often in the best position to see who is living close by and report potential ordinance violations, leading to better enforcement of the Ordinance. That the City did not initiate the process on its own indicates that its actions were not motivated by illegitimate animus toward Johnson.

Johnson also contends that the case-by-case enforcement of the Ordinance violates the Equal Protection clause. "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456 (1962). Many laws at different levels of government are enforced on a case-by-case basis without any equal protection violation.[11] Ordinances cannot be drawn with such precision that every incident of human existence is determined to a legal certainty. Although the City did force Johnson to comply with its Ordinance, it did so for a proper reason—namely, because he was operating a rental property without a license.

Because Kankakee had a rational interest in enforcing its Ordinance and because there is no evidence to show the city deliberately targeted Johnson out of animus or acted unreasonably in deciding to enforce the Ordinance, Johnson's equal protection claim cannot succeed.

Johnson's motion for summary judgment is denied in its entirety.

II. The defendants' motion for summary judgment

The defendants move for summary judgment on several grounds. The only argument that need be addressed is the defendants' argument that they are immune from liability.

A plaintiff may defeat a qualified immunity defense if he can show (1) the violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As discussed above, Johnson has not shown a violation of a constitutional right. Consequently, the individual defendants are qualifiedly immune from his suit.

In addition, a municipality is immune from suit under Section 1983 unless the plaintiff can show a custom, policy or practice that resulted in a violation of a constitutional right.

---

[11] Traffic tickets are a prime example of selective enforcement. Police officers have some discretion to issue a ticket, a warning, or neither, on a case-by-case basis, without violating the Equal Protection Clause. *See Hameetman*, 776 F.2d at 641 ("Selective, incomplete enforcement of the law is the norm in this country.").

*Monell v. Department of Soc. Servs. of New York*, 436 U.S. 658, 690-95 (1978). Without a constitutional violation, Johnson cannot maintain his action against the City.

The defendants' motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [#56] is granted in its entirety. The plaintiff's motion for summary judgment [#59] is denied. This case is terminated. The parties shall bear their own costs.

Entered this 31st day of August, 2006

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE